UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
ISSAMADE ASINGA,

                                  Plaintiff,                **OPINION & ORDER**

   - against -                                             No. 24-CV-5210 (CS)

THE GATORADE COMPANY,

                                  Defendant.
---------------------------------------------------------------x

Appearances:

Alexis Garmey Chardon
Garmey Law
Portland, Maine

Paul J. Greene
Global Sports Advocates, LLC
Portland, Maine

Annabelle Moskol Steinhacker
Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, PC
Springfield, New Jersey
*Counsel for Plaintiff*

Lauren S. Colton
Hogan Lovells US LLP
Baltimore, Maryland

Benjamin Andrew Fleming
Hogan Lovells US LLP
New York, New York
*Counsel for Defendant*

Seibel, J.

       Before the Court is the motion to dismiss of Defendant The Gatorade Company ("Gatorade"). (ECF No. 31.) For the following reasons, the motion is GRANTED.

I.  **BACKGROUND**

I accept as true the facts, but not the conclusions, as set forth in Plaintiff's Amended Complaint.  (ECF No. 26 ("AC").)

A.  **Facts**

Plaintiff Issamade Asinga is a nationally regarded track and field athlete whose record-breaking sprint times during his senior year in high school garnered significant public attention. (AC ¶¶ 40-43.)  In light of these accomplishments, Gatorade chose Plaintiff to receive its 2022-2023 National Player of the Year Award in boys' track and field.  (*Id.* ¶ 45.)  That award is granted to twelve high school student athletes exhibiting "athletic excellence, academic achievement, and exemplary character."  (*Id.* ¶¶ 45-47.)  In July of 2023, Gatorade flew the Players of the Year, including Plaintiff, to Los Angeles for a national ceremony, where they each received a locker full of free Gatorade-branded products.  (*Id.* ¶¶ 50-51.)  One of these "freebies" was a bottle of Gatorade Recovery Gummies, a supplement product designed to "support exercise recovery."  (*Id.* ¶¶ 54-55.)  The bottle displayed an NSF "Certified for Sport" logo, which signifies that a product has been tested for and does not contain "any of 290 substances banned by major athletic organizations."  (*Id.* ¶¶ 56-59.)  After confirming with his coach that the gummies were safe to take, Plaintiff began taking two gummies after his workouts beginning on July 10, 2023.  (*Id.* ¶¶ 74-76.)

On July 18, 2023, Plaintiff provided a routine urine sample to the Athletics Integrity Unit ("AIU").[1]  (*Id.* ¶ 78.)  This urine sample tested positive for trillionths of a gram amounts of cardarine, an illegal performance-enhancing drug observed to cause cancers and reproductive

---

[1] The AIU is the anti-doping enforcement arm of World Athletics, the international federation overseeing the sport of track and field worldwide.  (*Id.* ¶¶ 13, 20.)

harm in animal studies and severe diseases in humans who abuse it.  (*Id.* ¶¶ 66-68, 85.)  Plaintiff was immediately suspended from competition.  (*Id.* ¶ 86.)  After submitting for lab testing any supplements he had recently taken, Plaintiff discovered that the opened bottles of Gatorade Recovery Gummies he submitted had tested positive for cardarine in concentrations consistent with the cardarine levels found in his urine.  (*Id.* ¶¶ 93-94, 113.)  The AIU then directed Plaintiff to submit a sealed bottle of gummies from the same lot number so that it could conduct further testing.  (*Id.* ¶ 95.)

Upon attempting to purchase a sealed bottle of the gummies, Plaintiff discovered that they had been taken off the market several months before Gatorade gave them to him.  (*Id.* ¶¶ 96-97.)  When Plaintiff contacted Gatorade to request a sealed bottle, he was told that Gatorade had discontinued the gummies due to "manufacturing issues."  (*Id.* ¶¶ 98, 100.)  Around the same time, Gatorade informed the AIU that it had not preserved any sealed bottles of the gummies from the same lot number as the gummies that Plaintiff had received.  (*Id.* ¶ 101.)  When the AIU contacted NSF, it was revealed that the gummies from this lot number had never actually been NSF Certified for Sport and that the logo with which Gatorade had marketed the gummies was false.  (*Id.* ¶¶ 102-04.)[2]

Still claiming that it could not locate a sealed bottle from the relevant lot, Gatorade provided the AIU with a sealed bottle from a different lot – a lot which *had* been tested and cleared by NSF as Certified for Sport.  (*Id.* ¶¶ 119-22.)  Gatorade told the AIU that this was the

---

[2] Email exchanges between Gatorade and the manufacturer of the gummies allegedly reveal that well before Gatorade gave the gummies to Plaintiff, Gatorade was aware that the relevant lot had never been sent to NSF for testing and should not have been labeled as NSF Certified for Sport.  (*Id.* ¶¶ 131-34.)

3

only lot available for testing and that, while not from the same lot, the gummies provided were produced in the same "batch" as those Plaintiff received.  (*Id.* ¶¶ 123, 125, 141.)

After this bottle of gummies tested negative for cardarine, the AIU formally charged Plaintiff with a violation of the World Athletics Anti-Doping Rules.  (*Id.* ¶¶ 126-27.)  The World Athletics Disciplinary Tribunal ruled against Plaintiff on May 6, 2024, and that decision is now on appeal before the Court of Arbitration for Sport.  (*Id.* ¶¶ 149, 155.)  As a result of the decision, Plaintiff was barred from competing in the 2024 Paris Olympics and 2023 World Athletics Championships, was stripped of his world records, and lost both his athletic scholarship to Texas A&M University and the opportunity to enter into endorsement contracts.  (*Id.* ¶ 31.)

In June 2024, after NSF issued a public notice citing Gatorade for unauthorized use of its Certified for Sport mark, Gatorade informed the AIU that it had located a sealed bottle of the gummies from the same lot as the gummies Plaintiff had received.  (*Id.* ¶¶ 156, 158.)  The gummies in this bottle tested negative for cardarine.  (*Id.* ¶ 161.)  Plaintiff then submitted the gummies from his original opened bottles – the same gummies that had tested positive for cardarine just over six months earlier – for retesting.  (*Id.* ¶¶ 167-68.)  These gummies no longer showed traces of cardarine, suggesting that the passage of time had rendered the drug undetectable.  (*Id.* ¶¶ 168-69.)

**B.    Procedural History**

On July 11, 2024, Plaintiff filed his initial Complaint, which brought claims for (1) strict products liability, (2) negligence, (3) negligent misrepresentation, (4) breach of express and implied warranties, (5) violations of New York's and Texas's Deceptive and Unfair Trade Practices Acts (New York General Business Law § 349 and Texas Business and Commercial Code § 17.46), (6) negligent infliction of emotional distress, and (7) intentional infliction of

4

emotional distress ("IIED").  (*See generally* ECF No. 4.)  Defendant thereafter filed a pre-motion letter in anticipation of its motion to dismiss, (ECF No. 16), to which Defendant responded, (ECF No. 20).  At the pre-motion conference on October 7, 2024, I granted Plaintiff leave to amend the Complaint and set a briefing schedule for the motion.  (*See* Minute Entry dated Oct. 7, 2024.)  On October 15, 2024, Plaintiff filed the AC, which alleged (1) strict products liability, (2) negligence, (3) negligent misrepresentation causing risk of physical harm, (4) violation of Texas's Deceptive Trade Practices Act ("DTPA"), (5) tortious interference with contract, and (6) IIED.  (ECF No. 26.)  The instant motion followed.

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[3]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

### III.   DISCUSSION

#### A.   Choice of Law

Because this is a diversity action, I apply the choice-of-law principles of the forum state – New York – to determine which state's substantive law applies to Plaintiff's claims. *See, e.g.*, *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018). In New York, courts will dispense with choice-of-law analysis and apply New York law if it is among the relevant choices and no actual conflict of laws exists, meaning any differences in the relevant substantive rules from each jurisdiction would not have a significant possible effect on the outcome of the case. *See Valenzuela v. Putnam Cnty.*, No. 17-CV-8923, 2020 WL 5370195, at *5 (S.D.N.Y. Sept. 8, 2020).

As to Plaintiff's claims for strict products liability, negligence, negligent misrepresentation, and intentional infliction of emotional distress, I am aware of no conflict between the laws of New York and the laws of any of the states Plaintiff mentions (Texas,

6

Florida, and California),[4] and neither party has raised any such conflict. While Plaintiff argues that a full choice of law analysis may result in other states' laws governing several of his claims, both parties agree that the outcome of the instant motion would not change regardless of what state's law applies. (ECF No. 35 ("P's Opp.") at 6-7; ECF No. 33 ("D's Reply") at 1-2.) As such, the Court will apply New York law for the purposes of these claims.

As to Plaintiff's tortious interference claim, the parties' submissions, while they do not fully brief the choice of law issue, identify a relevant disparity between New York and Texas law. (*See* P's Opp. at 17; D's Reply at 6-8.) Texas law seems to permit a plaintiff to bring a claim for tortious interference where the defendant's conduct prevented the plaintiff itself from fulfilling obligations under a contract with a third party. *See AKB Hendrick, LP v. Musgrave Enters., Inc.,* 380 S.W.3d 221, 236 (Tex. App. 2012); *Seelbach v. Clubb*, 7 S.W.3d 749, 757 (Tex. App. 1999); *Tippett v. Hart*, 497 S.W.2d 606, 610 (Tex. Civ. App. 1973). New York law, in contrast, requires that the defendant cause the third party, as opposed to the plaintiff, to breach. *See ADYB Engineered for Life, Inc. v. Edan Admin. Servs. Ltd.*, No. 19-CV-7800, 2021 WL 1177532, at *20 (S.D.N.Y. Mar. 29, 2021) (collecting cases).[5] As discussed in more detail below, however, Plaintiff's claim fails under either state's law regardless of this disparity. Accordingly, the Court need not decide which state's law applies to this claim for purposes of

---

[4] Plaintiff attended high school in Florida, (AC ¶ 39), resides in Texas, (*id.* ¶ 34), and was given the gummies in California, (*id.* ¶¶ 50-54). Defendant is headquartered in Harrison, New York. (*Id.* ¶ 35.)

[5] Plaintiff argues against this interpretation of New York law, claiming that New York, like Texas, permits tortious interference claims where the plaintiff rather than a third party breaches. (P's Opp. at 16 (citing *Morris v. Blume*, 55 N.Y.S.2d 196, 199 (1945); *Italverde Trading, Inc. v. Four Bills of Lading*, 485 F. Supp. 2d 187, 203 (E.D.N.Y. 2007)).) As described in *ADYB Engineered for Life, Inc.*, however, several cases subsequent to the cases on which Plaintiff relies have rejected this view. 2021 WL 1177532, at *20.

7

the instant motion. *See IBM v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) ("Choice of law does not matter, however, unless the laws of the competing jurisdictions are actually in conflict. . . . In the absence of substantive difference, however, a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it."); *Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 530 F. Supp. 3d 447, 452-53 (S.D.N.Y. 2021) (explaining that "courts often decline to make a choice of law determination at the motion to dismiss stage" and that "[d]eclining to engage in a choice of law analysis is especially appropriate where . . . the parties have failed to brief the question").

### B. Strict Products Liability, Negligence, and Negligent Misrepresentation

Plaintiff first attempts to hold Gatorade liable for his losses under theories of strict products liability, negligence, and negligent misrepresentation. Because he has alleged no cognizable injury outside of purely economic damages, these claims must fail. "The general rule under New York law is that economic loss is not recoverable under a theory of negligence or strict products liability." *Am. Tel. & Tel. Co. v. N.Y. City Hum. Res. Admin.*, 833 F. Supp. 962, 982 (S.D.N.Y. 1993); *see Suffolk Cnty. v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2d Cir. 1984) ("New York law holds that a negligence action seeking recovery for economic loss will not lie."); *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 243 (S.D.N.Y. 2022) (applying rule to negligent misrepresentation claims).

The crux of the AC is that Gatorade's allegedly defective product resulted in Plaintiff experiencing a host of economic losses, including lost income and financial opportunities. (AC ¶¶ 32, 238.) While Plaintiff attempts to mold his allegations into a personal injury claim by pointing to the potentially harmful effects of cardarine, (*see id.* ¶¶ 66-69, 77), allegations that a

8

product "can cause adverse health effects . . . fall short of alleging that plaintiff [him]self suffered any plausible personal injury in particular," see *Gordon v. Hain Celestial Grp., Inc.*, No. 16-CV-6526, 2017 WL 213815, at *6 (S.D.N.Y. Jan. 18, 2017); *In re Chantix (Varenicline) Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*, 735 F. Supp. 3d 352, 406 (S.D.N.Y. 2024) ("Plaintiffs' allegations of harm based on mere exposure to [carcinogens], implicating future potential health consequences, are almost certainly insufficient to satisfy the physical injury exception to the economic loss doctrine . . . ."). Plaintiff's argument that the drug "caused immediate physical harm" by "contaminat[ing] his blood, organs, and urine," (AC ¶ 77), fares no better; the positive drug test merely demonstrated that Plaintiff had ingested the substance, not that it had harmed him or threatened to harm him in any tangible way. There is no plausible allegation that the ingestion of cardarine in the quantities at issue here caused physical injury, and while it may have caused a physical change – the presence of the substance in Plaintiff's blood – that change caused only economic harm. *See* Restatement (Third) of Torts: Miscellaneous Provisions § ___. Medical Monitoring Reporters' Note cmt. b n.1 (Am. L. Inst., Tentative Draft No. 2, 2023) ("[T]he mere existence of subcellular changes to, or presence of toxins in, the plaintiff's body traditionally do not qualify as compensable injuries.").[6]

---

[6] The Court acknowledges that Plaintiff may well regard some of his losses, such as being stripped of his world records and denied the opportunity to compete in the Olympics, as more than merely economic. While the Court understands this sentiment, absent an injury to his person or property, Plaintiff cannot recover on his negligence theories. *See Am. Tel. & Tel. Co.*, 833 F. Supp. at 983 ("An action in negligence or strict products liability seeks to redress injuries to persons or property."). Damage to reputation and loss of professional opportunities are insufficient to overcome the economic loss rule. *See Four Directions Air, Inc. v. United States*, No. 06-CV-283, 2007 WL 2903942, at *2, *4 (N.D.N.Y. Sept. 30, 2007) (aircraft pilot's claim that he suffered "loss of his previously accident-free record and damage to his professional reputation as a pilot, the reasonably foreseeable result of which is that he will be disqualified from pursuing opportunities for employment and advancement in corporate aviation for which he was otherwise eligible and which he previously had planned on pursuing" barred by economic loss rule); *Hall v. United Parcel Serv. of Am., Inc.*, 76 N.Y.2d 27, 32 (1990) (plaintiff who failed

Plaintiff cites *Horn v. Med. Marijuana, Inc.* for the proposition that ingestion of a banned substance alone suffices as a cognizable personal injury. (P's Opp. at 10 (citing *Horn v. Med. Marijuana, Inc.*, 80 F.4th 130 (2d Cir. 2023), *aff'd and remanded on other grounds*, 145 S. Ct. 931 (2025)).) That case, which addressed the standing requirements for RICO claims, has no bearing on what constitutes a personal injury for purposes of a tort suit. Indeed, an earlier decision in the same case, which was not appealed, dismissed plaintiff's tort claims under the economic loss doctrine based on facts strikingly similar to those at issue here. *See Horn v. Med. Marijuana, Inc.*, 383 F. Supp. 3d 114, 134 (W.D.N.Y. 2019) (plaintiff, who had lost his job upon testing positive for THC after consuming defendant's product advertised as THC-free, barred by economic loss doctrine from pursuing strict liability and negligence claims because he had suffered only economic loss, not personal injury), *modified on reconsideration on other grounds*, No. 15-CV-701, 2019 WL 11287650 (W.D.N.Y. Nov. 22, 2019).[7]

---

negligently administered lie detector test could not recover in negligence for "mental anguish" and injury to "personal and professional reputation" absent a physical injury). And because he has not alleged a physical injury, the emotional harm Plaintiff undoubtably suffered as a result of these lost opportunities is also not actionable in negligence. *See Couch v. N.Y. Daily News Co.*, No. 19-CV-5903, 2021 WL 7448476, at *10 (E.D.N.Y. Mar. 23, 2021) (setting out the limited circumstances under which New York law permits recovery for negligent infliction of emotional distress and noting that "it is well settled that the circumstances under which recovery may be had for purely emotional harm are extremely limited"); *In re Air Crash Near Clarence Ctr., N.Y., on Feb. 12, 2009*, No. 09-CV-488S, 2012 WL 1029505, at *4-*7 (W.D.N.Y. Mar. 26, 2012) (absent physical injury, New York law only permits recovery for emotional injuries in specific circumstances not present here). Moreover, Plaintiff chose to drop from the AC the claim for negligent infliction of emotional distress he had included in his original Complaint.

[7] The plaintiff in *Horn* lost his job when he failed a drug test after consuming a product that said it did not contain THC but did. *See* 80 F.4th at 132. The district court found that he lacked RICO standing because he was suing for lost earnings that were derivative of a personal injury. *See id.* at 133. The Circuit made clear that it was not deciding whether the plaintiff had suffered a personal injury from ingesting the product – which the plaintiff had by that time disclaimed, *see id.* at 141 – but rather was deciding the antecedent question of whether RICO barred recovery for damage to business or property if it flowed from or was derivative of personal injury, *see id.* at 135 n.2. The Court answered that question in the negative, *see id.* at 142, but its decision did not require it to, and it did not, decide whether a positive drug test from

10

Plaintiff attempts to limit the economic loss doctrine to claims seeking "remedy for harm to the product itself," contending that, because he is not alleging that the gummies "failed to live up to their promise of helping him recover from workouts," the rule should not apply. (*See* P's Opp. at 12-13.)  He also appears to argue that the economic loss doctrine should only apply where "a breach of contract claim is available" for the injury alleged. (*See id.* (quoting *Pac. Life Ins. Co. v. US Bank Nat'l Ass'n*, 636 F. Supp. 3d 366, 438 (S.D.N.Y. 2022)).)  The rule is not so narrow.  It is applicable "even when there is no contract at all between the parties" and no available remedy in contract.  *King Cnty., Wash. v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 303 (S.D.N.Y.) (citing *Suffolk Cnty.*, 728 F.2d at 62-63; *American Fin. Int'l Group-Asia, LLC v. Bennett*, No. 05-CV-8988, 2007 WL 1732427, at *3 (S.D.N.Y. June 14, 2007)), *vacated in part on other grounds*, No. 09-CV-8387, 2012 WL 11896326 (S.D.N.Y. Sept. 28, 2012); *see Ace Am. Ins. Co. v. Monaco Coach Corp.*, No. 07-CV-3341, 2008 WL 11449302, at *3 (E.D.N.Y. Sept. 16, 2008) ("economic loss rule generally applies to bar a plaintiff from recovering tort damages for its economic loss whenever a product fails to perform as promised," at least where relationship arises from "parties' consensual undertaking").  Further, in addition to barring claims seeking reimbursement for a defective product, it encompasses claims seeking "consequential damages which may result from product nonperformance."  *Hemming v. Certainteed Corp.*, 468 N.Y.S.2d 789, 790 (4th Dep't 1983).  All of Plaintiff's claimed harm stems from the allegation that Gatorade's product was not as advertised, not that it caused him

---

concealed THC in the product would amount to personal injury, let alone would do so for purposes of the economic loss doctrine of tort law.  In its recent opinion affirming the Circuit's decision, the Supreme Court similarly emphasized that it "express[ed] no view on whether Horn suffered an antecedent personal injury when he consumed THC." *Med. Marijuana, Inc. v. Horn*, 145 S. Ct. 931, 938 (2025).

any physical injury. Accordingly, Plaintiff's strict liability, negligence, and negligent misrepresentation claims are barred.

### C. Texas Deceptive Trade Practices Act Claim

Texas's DTPA protects consumers from "false, misleading, or deceptive acts or practices," including "causing confusion or misunderstanding as to the . . . approval, or certification of goods or services" or "representing that goods or services are of a particular standard, quality, or grade." Tex. Bus. & Com. Code § 17.46. To seek relief under the DTPA, the plaintiff must qualify as a "consumer." *See Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 400 (Tex. App. 2000) ("[C]onsumer status is an essential element of a DTPA cause of action."). "To qualify as a consumer, the plaintiff . . . must seek or acquire goods or services by purchase or lease." *Id.* at 401. "[O]ne who acquired a [product] by gift is not a consumer under the DTPA." *Brashear v. Panini Am., Inc.*, No. 05-22-01338, 2023 WL 4540270, at *14 (Tex. App. July 14, 2023).

Plaintiff attempts to define himself as a consumer under the act by claiming that Gatorade gave him the gummies in exchange for license "to commercialize on his reputation, image, and likeness." (*See* P's Opp. at 20.) The Complaint, however, repeatedly characterizes the gummies as a "gift." (*See, e.g.*, AC ¶¶ 7, 61, 64, 90.) While the Complaint alleges that potential marketing advantages may have motivated Gatorade to provide this gift, (*see id.* ¶¶ 5, 205), there is no suggestion that Gatorade's freebies were contingent on any promise from Plaintiff, nor that Plaintiff bestowed any rights on Gatorade or took any other action with the objective of obtaining the freebies, *see Martin v. Lou Poliquin Enters., Inc.*, 696 S.W.2d 180, 183 (Tex. App. 1985) ("[A] person's 'objective' is of paramount importance in determining DTPA consumer status."); *Brashear,* 2023 WL 4540270, at *14 (plaintiffs who received product as "freebies"

from defendant did not qualify as consumers). Absent any "purchase" or intent to purchase, Plaintiff lacks consumer status and cannot invoke the DTPA.[8]

D. **Tortious Interference with Contract**

As discussed above, the Court declines to decide whether New York or Texas law governs Plaintiff's tortious interference claim, as the claim fails regardless of which law applies. Although New York courts and Texas courts state the elements for a tortious interference claim slightly differently,[9] both require the plaintiff to plausibly allege that the defendant intentionally interfered with a contract between the plaintiff and a third party. *See JJM Sunrise Auto., LLC v. Volkswagen Grp. of Am., Inc.*, 997 N.Y.S.2d 270, 294 (Sup. Ct. 2014), *adhered to on reargument*, 26 N.Y.S.3d 724 (Sup. Ct. 2015); *ACS Invs., Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). The wrongfulness of the alleged conduct is immaterial absent a showing that the defendant intentionally interfered with the fulfillment of an obligatory contractual provision.

---

[8] Plaintiff cites cases interpreting similar statutes for the proposition that non-pecuniary transactions suffice to establish consumer status. (*See* P's Opp. at 20-21 (citing *State v. TikTok Inc.*, 245 N.E.3d 681 (Ind. Ct. App. 2024); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 881 (N.D. Cal. 2024)).) Even if these cases had any bearing on the meaning of Texas's DTPA, which they do not, they would not salvage Plaintiff's argument. Although these cases stand for the proposition that a plaintiff need not have transferred money to qualify as a consumer, they emphasize that there must have been a bargained-for exchange. *See TikTok Inc.*, 245 N.E.3d at 693; *In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*, 753 F. Supp. 3d at 909. No such exchange took place here.

[9] Under New York law, the elements of tortious interference with contract are "(1) the existence of a valid contract between the plaintiff and a third party, (2) the defendant's knowledge of that contract, (3) the defendant's intentional procurement of a third-party's breach of contract without justification, and (4) damages." *Kaplan v. Reed Smith LLP*, 919 F.3d 154, 160 (2d Cir. 2019). Texas law states the elements as "(1) the existence of a contract subject to interference, (2) a willful and intentional act of interference, (3) such act was a proximate cause of damage and (4) actual damage or loss occurred." *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 926 (Tex. 1993).

13

*See N. Star Contracting Corp. v. MTA Cap. Const. Co.*, 993 N.Y.S.2d 11, 16 (1st Dep't 2014); *All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 518, 532 (Tex. App. 2009).

Here, Plaintiff alleges that Gatorade interfered with two contracts: his athletic scholarship from Texas A&M University and his agreement to abide by the World Athletics Anti-Doping Rules. (AC ¶¶ 219, 221.) The AC does not provide any details about these contracts or any particular provisions of them, simply stating that Plaintiff had a "contractual obligation to avoid willingly ingesting banned substances" and had "contracted to abide by" the World Athletics Anti-Doping Rules. (*Id.* ¶¶ 117, 150.) This lack of specificity alone warrants dismissal. *See McDonald Oilfield Operations, LLC v. 3B Inspection, LLC*, 582 S.W.3d 732, 751 (Tex. App. 2019) ("A general statement that a contract . . . exists, without details about the specific terms of the contract, is insufficient to maintain a tortious-interference-with-contract claim."); *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 104 (2d Cir. 2012) ("Without providing additional factual allegations regarding, *inter alia*, the formation of the contract, the date it took place, and the contract's major terms, the [complaint] fails to sufficiently plead the existence of a contract.").

Even if Plaintiff's allegations were sufficient to plead the existence of a valid contract, however, his claim would nonetheless fail. Plaintiff provides no facts suggesting that any intentional conduct by Gatorade interfered with his ability to fulfill his "contractual obligation to avoid willingly ingesting banned substances." (AC ¶ 117.) While Plaintiff alleges that Gatorade cut corners in the testing process and falsely marketed its product with the NSF "Certified for Sport" logo, (*id.* ¶¶ 102-04, 131-34), at no point does the AC accuse Gatorade of intentionally causing Plaintiff to ingest a banned substance. Instead, Plaintiff attempts to sustain his claim by arguing that Gatorade's failure to provide a sealed bottle of gummies from the relevant lot

14

rendered him unable to "prove his innocence" and caused him to "remain in violation of his contractual duties." (*See* P's Opp. at 15.)  Even assuming that these allegations are true, failing to assist a plaintiff in proving that there was no contractual violation, as opposed to intentionally causing a violation in the first instance, does not amount to tortious interference.  *Cf. N. Star Contracting Corp.*, 993 N.Y.S.2d at 16 (dismissing tortious interference claim where defendant's alleged conduct occurred after alleged breach); *Mr. W Fireworks, Inc. v. NRZ Inv. Grp., LLC*, 677 S.W.3d 11, 26 (Tex. App. 2023) ("In evaluating a claim for tortious interference with a contract, a threshold question is whether the contract itself was subject to the alleged interference.").

Further, Plaintiff's allegation that Gatorade "willfully and intentionally" refused to promptly provide a sealed bottle of gummies from the same lot as Plaintiff's bottles is wholly conclusory.  *See, e.g., TileBar v. Glazzio Tiles*, 723 F. Supp. 3d 164, 202 (E.D.N.Y. 2024) (conclusory allegations of intentional conduct insufficient to state claim for tortious interference with contract).  None of the well-pleaded factual allegations in the AC suggest that Gatorade's initial failure to provide the sealed bottle amounted to knowing misconduct rather than simple negligence.  While the AC includes unsupported statements insisting that Gatorade was aware that the sealed bottle was available, (s*ee* AC ¶¶ 101, 220, 223), "courts are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555.  Because Plaintiff fails to plausibly allege that Gatorade intentionally caused him to breach a contractual obligation, his tortious interference claim is dismissed.

### E. Intentional Infliction of Emotional Distress

New York law requires a plaintiff claiming IIED to plead four elements: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of

causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Blanco v. Success Acad. Charter Sch., Inc.*, 722 F. Supp. 3d 187, 216 (S.D.N.Y. 2024). Plaintiff's claim fails on the first, second, and fourth elements.

First, Plaintiff fails to plausibly allege that Gatorade engaged in "extreme and outrageous" conduct. "The standard of outrageous conduct is strict, rigorous and difficult to satisfy." *Scollar v. City of N.Y.*, 74 N.Y.S.3d 173, 178 (1st Dep't 2018). "New York . . . requires that the conduct be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985). "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). Plaintiff argues that Gatorade engaged in outrageous conduct both by providing the allegedly mislabeled gummies and failing to produce a sealed supplement bottle from the correct lot. (*See* P's Opp. at 17-18; AC ¶¶ 225-37.) These allegations do not meet the high bar imposed by New York law for establishing "extreme and outrageous" conduct. *See Doe v. Yeshiva Univ.*, 703 F. Supp. 3d 473, 498 (S.D.N.Y. 2023) (allegations that school had conducted a sham investigation of rape allegations to protect its own reputation insufficiently "extreme and outrageous" to state a claim); *James v. DeGrandis*, 138 F. Supp. 2d 402, 421 (W.D.N.Y. 2001) (false charges of sexual harassment not sufficient); *Burlew v. Am. Mut. Ins. Co.*, 63 N.Y.2d 412, 417 (1984) (allegations that employer had intentionally delayed authorization for necessary surgery for several months in connection with worker's compensation claim not sufficient); *La Duke v. Lyons*, 673 N.Y.S.2d 240, 244 (3d Dep't 1998) (false charges of illegal conduct not sufficient).

Second, Plaintiff does not plausibly allege that Gatorade acted with the intent to cause or reckless disregard of the probability of causing him severe emotional distress. The AC never alleges that Gatorade specifically intended to harm Plaintiff, and the allegation that "Gatorade was aware that its actions would cause Issam to experience . . . severe emotional distress," (AC ¶ 229), is both insufficient and conclusory, *see Abadi v. Am. Airlines, Inc.*, No. 23-CV-4033, 2024 WL 1346437, at *44 (S.D.N.Y. Mar. 29, 2024) (dismissing IIED claims under both New York and Texas law where plaintiff did not plausibly allege that defendants acted "with the intent to cause harm to him or in reckless disregard that it would cause him severe emotional distress"); *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 105 (S.D.N.Y. 2020) (dismissing IIED claim where complaint did not "offer anything other than conclusory allegations that [defendant] acted with the intent to cause, or in reckless disregard of a substantial probability of causing, severe emotional distress").

Finally, Plaintiff fails to adequately allege that he suffered severe emotional distress. "To qualify as severe emotional distress, the emotional distress suffered by the plaintiff must be so severe that no reasonable person could be expected to endure it," *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 490 (S.D.N.Y. 2013), and conclusory allegations of emotional distress are insufficient to state a claim, *see Specht v. City of N.Y.*, 15 F.4th 594, 606 (2d Cir. 2021). Plaintiff alleges that he "suffers from depression and despair," (AC ¶ 236), but without specific allegations of severe emotional harm, these allegations cannot satisfy the injury prong of an IIED claim, *see Akhtar v. Aggarwala*, No. 23-CV-6585, 2024 WL 3862504, at *12 (S.D.N.Y. June 5, 2024) (claim that plaintiff suffered severe distress insufficient absent "factual allegations concerning the severity or duration of his emotional distress or mental anguish," "how the distress has impacted his daily activities," or "how Defendants' conduct has affected his health"), *report and recommendation*

*adopted sub nom. Akhtar v. Adams*, 2024 WL 3862673 (S.D.N.Y. Aug. 19, 2024); *Cheikhaoui v. City of N.Y.*, No. 22-CV-8855, 2023 WL 5917646, at *11 (S.D.N.Y. Sept. 11, 2023) (allegation that "Plaintiff suffered and continues to suffer severe and permanent psychological and emotional injuries, including, but not limited to, fear and apprehension of imminent physical harm, humiliation, embarrassment, shame, bouts of screaming, and prolonged agitation" was conclusory and thus insufficient to state a claim).

Because Plaintiff has failed to allege sufficient facts to meet the necessary elements of an IIED claim, Defendant's motion to dismiss this claim is granted.

### F.     Leave to Amend

Finally, I consider whether Plaintiff should be granted leave to amend, which should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended his complaint, (*see* AC), after having the benefit of a pre-motion letter from Defendant, (*see* ECF No. 16), and the discussion at the October 7, 2024 pre-motion conference, (*see* Minute Entry dated Oct. 7, 2024).[10]  In general, a plaintiff's failure to fix

---

[10] Defendant's pre-motion letter did not address the tortious interference claim, as that was not added until Plaintiff amended. But it is unlikely, if Plaintiff had facts showing specific contractual provisions and intentional conduct by Defendant, that he would have omitted them, and in any event amendment to address that claim is nevertheless inappropriate for the reasons stated in the next paragraph.

deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*."); *see also Baines v. Nature's Bounty (NY), Inc.*, No. 23-CV-710, 2023 WL 8538172, at *3 (2d Cir. Dec. 11, 2023) (no abuse of discretion where plaintiffs "already amended their complaint once in the face of a pre-motion letter from Defendants," and then "requested leave to amend again in a single, boilerplate sentence without specifying what allegations they could add or how amendment would cure any deficiencies"); *Bardwil Indus. Inc. v. Kennedy*, No. 19-CV-8211, 2020 WL 2748248, at *4 (S.D.N.Y. May 27, 2020) (dismissing with prejudice where plaintiff amended following pre-motion letters and pre-motion conference that identified the deficiencies resulting in dismissal).

      Further, Plaintiff has not asked to amend or otherwise suggested that he is in possession of facts that would cure the deficiencies identified in this ruling. *See Bank v. Gohealth, LLC*, No. 21-1287, 2022 WL 1132503, at *1 (2d Cir. Apr. 18, 2022) (summary order) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."); *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide

additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend); *GateGuard, Inc. v. Amazon.com Inc.*, No. 21-CV-9321, 2023 WL 2051739, at *21 (S.D.N.Y. Feb. 16, 2023) (denying leave to amend where plaintiff "already amended its complaint in response to [Defendant's] pre-motion letter detailing the bases for its anticipated motion to dismiss" and did not seek leave to amend again).

Accordingly, the Court declines to grant Plaintiff leave to amend *sua sponte.*

\*\*\*

The Court understands how unsatisfying this decision will be for Plaintiff. Taking the allegations in the Amended Complaint as true, he will (absent success on appeal before the Court of Arbitration for Sport) be deprived of his athletic career for four years through no fault of his own. Unfortunately, the causes of action he has asserted are not the right fit for the circumstances.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 31), and close the case.

**SO ORDERED.**

Dated: April 28, 2025
    White Plains, New York

*Cathy Seibel*
CATHY SEIBEL, U.S.D.J.